UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD HAMBLIN,

    Plaintiff,

v.                                      CASE No. 8:11-CV-1645-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

ORDER

The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

I.

The plaintiff, who was thirty-nine years old at the time of the most recent administrative hearing and who has the equivalent of a high school education, has a vague work history (Tr. 57). He filed a claim for

---

*The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

supplemental security income payments, alleging that he became disabled due to sleep disorder, DDD (degenerative disc disease), depression, and obesity (Tr. 243). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before a law judge. The law judge found that the plaintiff had severe impairments of morbid obesity, sleep apnea, restrictive lung disease, and polyarthalgias (Tr. 91). The law judge determined that, notwithstanding these limitations, the plaintiff could perform a full range of light unskilled work (Tr. 92). Relying upon the medical-vocational guidelines, the law judge concluded that the plaintiff was not disabled (Tr. 95). When the plaintiff sought review of that determination, the Appeals Council remanded the matter to the law judge for further proceedings (see Tr. 97-100)

The plaintiff subsequently had a second de novo hearing before a different administrative law judge. The law judge found that the plaintiff has severe impairments of "obesity, osteoarthritis, degenerative disc disease, carpal tunnel syndrome, and depression" (Tr. 12). He further found that the plaintiff's obstructive pulmonary disorder, hypothyroidism and sleep apnea are not severe impairments because the evidence does not indicate that these

impairments created more than a minimal limitation (Tr. 14). The law judge concluded that, despite his impairments, the plaintiff could perform sedentary work with the following restrictions (Tr. 16):

> [H]e can never climb ladders, ropes or scaffolds. He is limited to occasionally climbing ramps and stairs, balancing, stooping, crouching, kneeling, and crawling. He is limited to no more than frequently handling and fingering. He is limited to performing unskilled work defined as SVP 1 or 2 and involving simple, routine tasks.

The law judge decided that these limitations prevented the plaintiff from returning to prior employment (Tr. 21). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as order clerk, reception clerk and sorter (Tr. 21-22; see Tr. 58-60). The law judge therefore ruled that the plaintiff was not disabled (Tr. 22). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on three grounds. None warrants reversal.

The plaintiff argues first that the vocational expert's testimony that the plaintiff could perform the jobs of order clerk and reception clerk "was not consistent with the Dictionary of Occupational Titles," and that the vocational expert did not adequately explain the disparity, in contravention of Social Security Ruling 00-4p ("SSR 00-4p"), 2000 WL 1898704 (Doc. 23, pp. 5- 8).

SSR 00-4p is designed to identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by a vocational expert and information in the Dictionary of Occupational Titles ("DOT"). To this end, the Social Security Ruling states that, "[w]hen a VE [vocational expert] ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE ... evidence and information provided in the DOT." 2000 WL 1898704 at *4. However, contrary to the plaintiff's contention (Doc. 23, p. 6), the Eleventh Circuit has determined that SSR 00-4p does not have the force of law and therefore is not binding on this court. Miller v. Commissioner of Social Security, 246 Fed. Appx. 660 (11th Cir.

2007). Consequently, even if SSR 00-4p had not been followed, that failure would not support reversal.

Regardless, the record indicates that the law judge complied with SSR 00-4p. Thus, the law judge inquired as to whether the vocational expert's testimony was consistent with the DOT (Tr. 62). In response, the vocational expert stated that his testimony was consistent with the DOT (id.), after explaining an apparent disparity between his testimony and DOT specific vocational preparation ("SVP") levels (Tr. 59-60). The vocational expert's testimony was unchallenged by the plaintiff's representative at the hearing.

The plaintiff now argues that the vocational expert's testimony that a person limited to simple, routine tasks could perform the jobs of order clerk and reception clerk conflicts with the DOT because the DOT identifies these occupations as requiring level 3 reasoning (Doc. 23, pp. 6-8). However, this asserted inconsistency was reconciled through the vocational expert's testimony.

As pertinent here, the law judge found that the plaintiff was limited to performing "unskilled work defined as SVP 1 or 2 and involving

simple, routine tasks" (Tr. 16). The law judge posed a hypothetical question to the vocational expert which covered this mental residual functional capacity (Tr. 59). The vocational expert responded that, with these limitations, the plaintiff could perform the jobs of food and beverage order clerk, reception clerk, and sorter (Tr. 59-60).

In this regard, the vocational expert stated that the food and beverage order clerk is an unskilled job with an SVP of 2 (Tr. 59). He further elaborated that, although the jobs of reception clerk and sorter are identified in the DOT as SVP 3, there are subsets of those jobs that are "the very simplest jobs" which involve work at the "unskilled, SVP 2" level (Tr. 59, 60). The law judge acknowledged in the decision this refinement and accepted the vocational expert's explanation (see Tr. 22).

The vocational expert's testimony that the food and beverage order clerk is an "unskilled" job, and his specification of a subset of the reception clerk and sorter jobs that are "the very simplest" and "unskilled" also resolves any purported inconsistency between the vocational expert's testimony that a person limited to simple routine tasks could perform these jobs and the DOT's designation of the order and reception clerk jobs as

involving level 3 reasoning. See Leonard v. Commissioner of Social Security, 409 Fed. Appx. 298 (11th Cir. 2011) (apparent conflict between the law judge's finding that a person who is limited to simple repetitive tasks could perform a job with a DOT reasoning level of 3 is resolved by the vocational expert's explanation that the occupation is considered unskilled in the vocational rehabilitation field and that a subset of these jobs is repetitive and rote).

As indicated, the plaintiff had a disability representative at the hearing who was given an opportunity to question the vocational expert (Tr. 37, 62). If the plaintiff's representative had any doubt whether these jobs exceeded his mental residual functional capacity, she could have simply asked the vocational expert. See Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000)(Once the expert identifies jobs that the plaintiff can perform, the burden switches to the plaintiff to prove that he was unable to perform those jobs.). However, the plaintiff's representative did not cross-examine the vocational expert (Tr. 62). Accordingly, the law judge reasonably accepted the uncontroverted testimony

of the vocational expert (see Tr. 22), who has worked in the field for more than forty years (Tr. 175-81).

Moreover, even if the vocational expert's testimony did not resolve any purported inconsistency, the law judge would not have erred by relying upon the vocational expert's testimony in finding that the plaintiff could perform the jobs of food and beverage order clerk and reception clerk because the expert's testimony prevails over the DOT. Jones v. Apfel, supra, 190 F.3d at 1229-30. Thus, the Eleventh Circuit has held that, where there is a conflict between the expert's testimony and a job description contained in the DOT, "the VE's testimony 'trumps' the DOT." Id.; Miller v. Commissioner of Social Security, supra, 246 Fed. Appx. 660. As the court of appeals explained, the DOT is not comprehensive and is to be supplemented with local information, which the expert provides. Jones v. Apfel, supra, 190 F.3d at 1230; see also Hurtado v. Commissioner of Social Security, 4255 Fed. Appx. 793, 795-96 (11th Cir. 2011)("the VE is an expert on the kinds of jobs a person can perform, while the DOT simply provides generalized overviews of jobs and not the specific requirements of a job"); Jones v. Commissioner of Social Security, 423 Fed. Appx. 936, 939 (11th Cir.

2011)(the "DOT provides descriptions of occupations, not of the numerous jobs within those occupations, and the VE may be able to provide more specific information about jobs or occupations than the DOT"). In this regard, the vocational expert testified at the hearing that his opinions were comprehensively predicated on an examination of numerous sources and his experience (Tr. 61). Therefore, the law judge "was permitted to base his findings about these ... jobs exclusively on the VE's testimony, irrespective of any inconsistency with the DOT...." Jones v. Commissioner of Social Security, supra.

Finally, the law judge also found, based on the testimony of the vocational expert, that the plaintiff could perform the job of sorter (see Tr. 22). The sorter job has a DOT reasoning level of 2, and the plaintiff cites no authority that it is not a simple and routine job (see Doc. 23, p. 7). Although the plaintiff speculates that there "may not" be a significant number of sorter jobs available (id., p. 8), the vocational expert's uncontroverted testimony is to the contrary. Thus, the vocational expert testified that there are about 210 of the "very simplest" sorter jobs in the Tampa area, that 1,300 of these jobs exist statewide, and 21,000 nationwide (Tr. 60). Therefore, even relying

solely upon the sorter job, work exists for the plaintiff in significant numbers. See Brooks v. Barnhart, 133 Fed. Appx. 669, 670 (11th Cir. 2005)(noting that the Eleventh Circuit has held that 174 jobs in the area is a significant amount of jobs). Accordingly, even if there had been an error with respect to the jobs of order clerk and reception clerk, that error would be harmless since the sorter job alone supports the law judge's finding that there are jobs in significant numbers in the national economy that the plaintiff can perform.

B. The plaintiff argues next that the law judge erred by failing to find that his sleep apnea was a severe impairment (Doc. 23, pp. 8-12). The law judge acknowledged the plaintiff's claim that he is disabled due to sleep apnea, and noted the plaintiff's testimony that he uses a CPAP machine at night for sleep apnea (Tr. 14, 17). However, the law judge found that "sleep apnea [is] not [a] severe impairment[]" because "[t]here is no significant evidence regarding sleep apnea. The evidence does not indicate th[is] impairment[] created more than minimal limitation on the claimant's ability to function" (Tr. 14).

The regulations define a non-severe impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do

basic work activities." 20 C.F.R. 404.1521(a). Accordingly, the court of appeals has stated that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). The law judge expressly acknowledged this standard in his decision (Tr. 11) and, as indicated, he applied it with regard to the plaintiff's sleep apnea (see Tr. 14).

       The plaintiff argues that the law judge's finding that his sleep apnea is a non-severe impairment is "simply not supported by substantial evidence" (Doc. 23, p. 12). However, consistent with the law judge's finding, the record contains no medical evidence of functional limitations resulting from sleep apnea. Thus, there is no treating or examining source assigning any functional limitation to the plaintiff based on sleep apnea. In fact, the plaintiff's treating physician, Dr. Mark Bowden, who opined that the plaintiff had significant functional limitations did not even mention sleep apnea as a contributing factor to his limitations (Tr. 588). Furthermore, Dr. Bowden treated the plaintiff for several years and did not include sleep apnea

-13-

in his diagnostic impressions (see, e.g., Tr. 611, 613, 616, 618, 620, 622, 624, 633, 635, 637). Also, the plaintiff was admitted to Baycare in connection with a mental impairment and he denied a sleep disorder (Tr. 648). When he was discharged from the program several months later, his medical condition included only "mild sleep apnea" (Tr. 674).

Notably, the plaintiff was tested at a medical facility for carpal tunnel syndrome. Although that facility also does "sleep testing" (Tr. 604), no such testing was ever performed.

In light of these circumstances, the law judge could reasonably conclude that "[t]here is no significant evidence regarding sleep apnea" (Tr. 14). That finding, moreover, is supported by substantial evidence.

The plaintiff relies simply upon his testimony at the administrative hearings, and his subjective complaints to medical providers that, due to sleep apnea, he does not sleep well at night and is fatigued and falls asleep repeatedly during the day (Doc. 23, pp. 11-12). He also cites to a physician's impression that he has sleep apnea (id., p. 11).

However, the diagnosis of an impairment does not indicate its severity. Thus, "a diagnosis or a mere showing of 'a deviation from purely

medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); see also Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005). It is the functional limitations from an impairment that determine whether a claimant is disabled. As indicated, no doctor has assigned the plaintiff functional limitations based on sleep apnea.

Furthermore, the plaintiff's testimony and subjective complaints to physicians of problems caused by sleep apnea did not compel the law judge to conclude his sleep apnea was a severe impairment because the law judge did not find the plaintiff fully credible. Thus, the law judge found that the plaintiff's subjective complaints were not credible to the extent that they were inconsistent with the law judge's determination of the plaintiff's residual functional capacity (Tr. 17). The law judge explained that he partially discredited the plaintiff's subjective complaints because the plaintiff's statements of disabling functional limitations were not supported by the objective medical evidence, and due to numerous inconsistencies

between the plaintiff's testimony and other record evidence regarding the plaintiff's daily activities (Tr. 17-19).

The plaintiff has not even attempted to develop a challenge to the law judge's credibility determination. In this case, a scheduling Order was entered which stated that the plaintiff must identify with particularity the grounds upon which the administrative decision is being challenged and that "any ... discrete challenges must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 15, p. 2). Here, the plaintiff did not articulate, develop, or support any challenge to the law judge's credibility finding. Consequently, the plaintiff's testimony and his subjective complaints to examining doctors do not establish that he had a severe impairment of sleep apnea. And, they clearly do not compel such a finding. Adefemi v. Ashcroft, supra.

C. The plaintiff's final argument is that the law judge "did not adequately comply with SSA Ruling 02-1p" (Doc. 23, pp. 12-13). That ruling provides, "[a]s with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2000 WL 628049 at *7 (S.S.A.). In this regard, the plaintiff

-16-

contends that the law judge failed to consider his obesity in combination with the plaintiff's sleep apnea. That contention is baseless.

The law judge, who recognized that the plaintiff is 6' 2" and weighs over 400 pounds, found that the plaintiff suffers from the severe impairment of obesity (Tr. 12). The law judge stated that he "carefully considered Social Security Ruling 02-1p," and he specifically noted that obesity has the "potential of causing or contributing to other impairments" (Tr. 18). In this connection, the law judge found that "the evidence indicates the claimant's obesity primarily contributes to his back pain and decreased range of motion" (id.). Moreover, the law judge concluded that "the combination of the claimant's impairments, including obesity" substantially limits him to only a reduced range of sedentary work (Tr. 20). This discussion satisfies SSR 02-1p. See Castel v. Commissioner of Social Security, 355 Fed. Appx. 260, 264 (11th Cir. 2009).

Moreover, the law judge reasonably found that the plaintiff's sleep apnea was a non-severe impairment, which means that the condition, at most, has only a minimal effect on the plaintiff. Therefore, there are no functional limitations from the sleep apnea to be considered along with the

plaintiff's obesity. Under these circumstances, there clearly was no violation of SSR 02-1p.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED. The Clerk shall enter judgment accordingly and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 24th day of August, 2012.

/s/ Thomas G. Wilson
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-13-